E-FILED
Monday, 14 May, 2007  12:07:06 PM
Clerk, U.S. District Court, ILCD

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| JAMES WALTERS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 05-cv-1255 |
| DHL EXPRESS, | ) |
| Defendant. | ) |

### O P I N I O N and O R D E R

Before the Court is the Motion for Partial Summary Judgment filed by Defendant, DHL Express, on February 5, 2007 [Doc. 21]. For the reasons that follow, the Motion is GRANTED.

### BACKGROUND

On March 25, 2005, Plaintiff, James Walters, arranged for his ex-wife, Vikki Choate, to ship five boxes from Beech Island, South Carolina to Pekin, Illinois using Defendant, DHL Express, as the carrier. According to Walters, the boxes arrived in a damaged condition and various items were either missing or damaged. These items included compact disks, clothing, video disks (DVDs), papers, photographs, and a Carlton Sheets real estate package. Walters seeks compensation for the missing and/or destroyed items.

In this Motion for Partial Summary Judgment, Defendant only seeks judgment on Plaintiff's damages. Defendant asserts that

Plaintiff's damages are limited to the actual cash value of the missing/destroyed items, or $100.00 (per box), whichever is less.  Defendant states that Plaintiff's damages are limited as the insurance agreement entered into by the parties limits its damages to the above amounts.  Plaintiff, on the other hand, asserts that he purchased additional insurance, in the amount of $2000 per box, prior to shipment.

## DISCUSSION

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); See also Celotex Corp., 477

U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record -- only those inferences that are reasonable." Bank Leumi Le-Isreal, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). Therefore, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and, the moving party is entitled to judgment as a matter of law. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, in ruling on a motion for summary judgment, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

Common carrier liability is governed by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. The Carmack Amendment provides, in relevant part:

> A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier . . . [is] liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by [the carrier].
>
> 49 U.S.C. § 14706(a)(1).

A carrier can, however, limit its liability:

> A carrier providing transportation or service . . . may . . . establish rates for the transportation of property . . . under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation.
>
> 49 U.S.C. § 14706(c)(2)(A).

This Court already has found that the Carmack Amendment governs Plaintiff's claims. [Doc. 10, Order Adopting a Report and Recommendation on the Motion to Dismiss]. The parties do not appear to dispute this conclusion or that Defendant may limit its liability. See Treiber & Straub, Inc. v. U.P.S., Inc., 474 F.3d 379, 384 (7th Cir. 2007) ("The Carmack Amendment [] applies to ground carriers and not air carriers."). In order to establish liability, Plaintiff must initially show that the

goods were delivered to Defendant in good condition, that they arrived missing or damaged, and the amount of damages.  Am. Nat'l Fire Ins. Co. v. Yellow Freight Sys. Inc., 325 F.3d 924, 928-929 (7th Cir. 2003).  Defendant only seeks judgment on the amount of damages.

Defendant indicates that there are four criteria that must be met in order for it to limit liability pursuant to the Carmack Amendment:

> There are four steps a carrier must take to limit its liability under the Carmack Amendment: (1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shipper's agreement as to his choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment.
>
> Hughes v. United Van Lines, Inc., 829 F.2d 1047, 1416 (7th Cir. 1987).

Defendant states that it is not required to maintain a Surface Transportation Board[1] tariff rate as it is not transporting "household goods"[2] nor is it engaged in "noncontiguous domestic

---

[1] Formerly the Interstate Commerce Commission.  49 U.S.C. § 702.

[2] Household goods are defined as "personal effect and property used or to be used in a dwelling . . . ." 49 U.S.C. § 13102(10). A "Household goods motor carrier" is defined as a motor carrier who, in addition to transporting household goods, conducts other activities related to the packing, boxing, loading, and unloading of items.  49 U.S.C. § 13102(12).  Noncontiguous domestic trade means transportation service originating or ending in Alaska, Hawaii, or territories or possessions of the United States.  49 U.S.C. § 12102(17).

trade" as defined by the Carmack Amendment.  49 U.S.C. § 13702. Regardless of whether this argument is valid, in light of changes to the Carmack Amendment,[3] Plaintiff does not challenge this assessment.  Indeed, the only issue that Plaintiff apparently contests is whether Defendant obtained "the shipper's agreement as to his choice of liability."

Defendant argues that its liability is limited by the terms of the waybill signed by Choate prior to the pick-up of Plaintiff's boxes.  The waybill provides, on the front side, that:

> Absent a higher shipment valuation, carriers' liability is limited to $100 per package, or actual value, whichever is less, special or consequential damages are not recoverable.  See terms and conditions on reverse side of this non-negotiable waybill.
>
> (Def. Ex. A p. 1) (all caps omitted)

Also on the front side, there is a box in which a shipper can assign a "shipment valuation" by checking a box next to "shipment value protection" and including a dollar amount. (Def. Ex. A. p. 1).  The reverse side of the waybill provides:

---

[3] See Interstate Commerce Commission Termination Act of 1995. 49 U.S.C. § 702.  No party has addressed whether the tariff requirement is now a non-issue given changes in the law.  See generally Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc., 331 F.3d 834 (11th Cir. 2003).  In any event, the tariff issue is only tangential to the ultimate issue of this case, whether Defendant validly limited its liability.

6

> 6. DHL's Liability
>
> DHL's liability is strictly limited to direct loss only and to the per kg./lb. limits in this Section 6. If Shipper regards these limits as insufficient it must make a special declaration of value and request Shipment Value Protection as described in section 8 (Shipment Value Protection) or make its own Insurance arrangements.  All other types of loss or damage are excluded . . . .  DHL's liability in respect of any one Shipment transported, without prejudice to Sections 7-11, is limited to its actual cash value and shall not exceed the greater of:
>
>> $US 100 . . . .
>
>                         \* \* \*
>
> 8. Shipment Value Protection
>
> If the Shipment has an actual value greater than the liability limits listed in Section 6, DHL can arrange shipment value protection for Shipper covering the actual cash value in respect of loss of or physical damage to the Shipment provided Shipper completes the Declared Value for Carriage section on the front of the waybill or requests it via DHL's automated systems and pays the applicable premium.  Shipment Value Protection does not cover indirect loss or damage, or loss or damage caused by delays.  If Shipper does not declare a value for carriage and pay the appropriate charge, Shipper assumes all risks of loss or damage over the amount of DHL's liability as stated in Section 6
>
> (Def. Ex. A, p. 2)

It is undisputed that Choate did not check the "Shipment Value Protection" box and did not indicate any shipment valuation. Thus, Defendant argues, as Choate failed to indicate any additional protection on the waybill, which constitutes the

7

parties' entire agreement, Plaintiff's damages are limited by the terms of the waybill.

Plaintiff, however, offers a different scenario. Plaintiff argues that he contracted for the Shipment Value Protection by faxing a document to a DHL representative prior to the pick-up of the boxes for delivery.[4] In particular, Plaintiff states that after Choate had packed the boxes, he called DHL to arrange a pick-up and was told to talk to the DHL carrier when he arrived to pick up the boxes about any insurance. (James Walters Aff. ¶ 12). When the DHL carrier arrived, Plaintiff spoke to him on the telephone regarding insurance on the packages. (Walters Aff. ¶ 13). The carrier told him to call DHL in order to arrange for insurance. (Walters Aff. ¶ 13). Plaintiff called DHL, again, and eventually was told to FAX an authorization letter for the insurance. (Walters Aff. ¶ 17). Plaintiff went to a Staples store and faxed the authorization letter to the attention of Karen Reynolds with a credit card number for "frieght [sic] charges and extra protection, Insurance."[5]

---

[4] For purposes of summary judgment, the Court will accept Plaintiff's version of events.

[5] The Court notes that the parties provided various documents to the Court that include original signatures, addresses, and credit card numbers. Such documents should have been redacted prior to filing pursuant to this Court's CM/ECF rules. Plaintiff's and Defendant's counsel are CAUTIONED to follow Civil Administrative Procedure (II)(I) governing the filing of documents that contain personal data identifiers in the future.

(Walters Aff. ¶ 18;[6] Pl. Ex. D).  Plaintiff then "authorized Vikki [Choate] to release my packages to the next DHL delivery person who came to her home."  (Walters Aff. ¶ 19).[7]  Thus, Plaintiff states, there is a genuine issue of material fact as to whether there was a "post-waybill agreement" for the added protection on the boxes.

Defendant contends that each of the facts outlined above are merely parole evidence and cannot be introduced to expand its liability as provided by the waybills.  Plaintiff has chosen to completely ignore this argument.  Plaintiff does not address any of the agency issues raised by Defendant.  Plaintiff does not offer any argument that Choate only had limited authority to bind Plaintiff.  Plaintiff does not address whether the waybill comprised the entire agreement between the parties and that additional evidence is merely parole evidence.  Plaintiff has failed to present any case authority that would support his position.  Indeed, Plaintiff's argument consists of one paragraph that does not shed any light on the nuances of this dispute.

---

[6]  Plaintiff's affidavit indicates that he authorized DHL to "place $2000 worth of insurance on each package through my mother's credit card."  (Walters Aff. ¶ 18).  However, the FAX itself does not mention this dollar amount.  (Pl. Ex. D).

[7]  The FAX itself purports to be from Laverne Walters, Plaintiff's mother.  The document indicates that Laverne Walters authorized DHL to ship the boxes in question.

9

The question remains, then, whether the FAX could modify the waybills signed by Choate.  Illinois law[8] subscribes to the "four corners" rule: that the parties' written agreement evinces the parties' intent and cannot be modified by extrinsic evidence.  Camico Mut. Ins. Co. v. Citizens Bank, 474 F.3d 989, 992-993 (7th Cir. 2007).  Thus, "the parol evidence rule generally precludes evidence of understandings not reflected in the contract, reached before or at the time of its execution, which would vary or modify its terms."  W.W. Vincent and Co. v. First Colony Life Ins. Co., 814 N.E.2d 960, 966 (Ill. App. Ct. 2004).  However, in Pierce v. Atchison, Topeka and Santa Fe Ry. Co., 65 F.3d 562 (7th Cir. 1995), the Seventh Circuit stated that:

> we have recognized that parties can present evidence outside of the contract to show that although the contract appears to be clear to a typical reader of English, anyone who understood the circumstances in which the contract had been intended to apply would know that it does not mean what it seems to mean.
>
> Id. at 568 (citation and quotation marks omitted).

This so-called provisional admission rule is followed by various divisions of the Illinois Court of Appeals.  See Ahsan v. Eagle, Inc., 678 N.E.2d 1238, 1241 (Ill. App. Ct. 1997) ("We join the current trend in Illinois law which allows a court to consider parole evidence *provisionally* to determine if an agreement that

---

[8] There appears to be no dispute that Illinois contract law governs this dispute.

10

appears to be clear on its face is actually ambiguous." (emphasis in original)).

However, in Air Safety, Inc. v. Teachers Realty Corp., 706 N.E.2d 882, 885 (Ill. 1999), the Illinois Supreme Court declined to apply this provisional admission rule to a contract that includes an explicit integration clause. Id. at 885. The Court also declined to rule on whether the provisional admission rule would apply to contracts without an integration clause. Id. Nonetheless, in applying Illinois law, the Seventh Circuit, in Davis v. G.N. Mortg. Corp., 396 F.3d 869 (7th Cir. 2005), refused to extend the provisional admission rule to a contract that was fully integrated even though it did not contain an integration clause. The court stated that:

> An integrated writing is one intended by the parties to be a final and complete expression of the entire agreement, which means it contains such language as imports a complete legal obligation. Importantly, only the subject writing may be considered to determine the integration question.

Id. at 879 (citations and quotation marks omitted). If the contract represents a complete agreement between the parties, extrinsic evidence cannot be submitted to a trier of fact in order to determine the meaning of an otherwise facially unambiguous contract. See Quake Const. Inc. v. American Airlines, Inc., 565 N.E.2d 990, 994 (Ill. App. Ct. 1990) ("If no ambiguity exists in the writing, the parties'

intent must be derived by the circuit court, as a matter of law, solely from the writing itself.").

The waybill at issue is such an integrated, unambiguous, contract.[9]  It contains all the necessary provisions that would legally bind the parties.  Pursuant to the waybill, if Plaintiff wanted to increase the protection on his goods, he should have marked the appropriate box and indicated a proper dollar amount.  That Plaintiff may have faxed a document to Defendant that purports to increase the protection on the goods shipped is exactly the type of evidence that was rejected by the Davis Court as such extrinsic material cannot be used to determine whether an agreement is integrated.  Thus, Plaintiff is barred by the parol evidence rule from seeking greater protection for his packages than what is provided by the waybill.

Pursuant to the waybill, Plaintiff could have added protection to his packages in one of two ways: by filling out the front of the waybill or by using DHL's automated system.  As the Eleventh Circuit has stated, in an admittedly factually distinguishable case:

> the declared value box provides the reasonable
> opportunity to choose a higher level of liability, and

---

[9] Plaintiff appears to argue that the FAX and Plaintiff's discussions with a DHL representative constituted a second agreement.  Plaintiff does not support this argument with any citation to authority, in violation of Local Rule 7.1(D)(1)(c).  The Court will not address this undeveloped and unsupported argument.

> the shipper's expectation that the carrier would be fully liable for any potential loss despite a failure to declare the actual value of the shipment is no more than a unilateral mistake.
>
> Sassy Doll, 331 F.3d at 842.

There is no question of fact in this case that Plaintiff's agent failed to fill in the front of the waybill and designate an amount of protection on the shipment.

There also is no question of fact that Plaintiff did not use DHL's "automated system" in seeking added protection. In Defendant's statement of material fact number 4, Defendant provides a copy of section 8 of the waybill, which is reproduced above. In response, Plaintiff admits to the fact and emphasizes the portion of section 8 that provides for a request via DHL's "automated system." However, throughout Plaintiff's remaining responses to Defendant's statement of material facts and in his argument section, Plaintiff provides no facts or argument that Plaintiff's actions constituted use of Dhl's "automated system." That is, Plaintiff did not argue or present facts that by calling DHL and faxing over a document, Plaintiff used DHL's "automated system" to request added protection.

At the summary judgment stage, it is Plaintiff's obligation to come forth with evidence that would tend to show that there is a genuine issue of material fact. The

13

Seventh Circuit Court of Appeals has oft repeated that summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005) (citation and quotation marks omitted); Koszola v. Board of Education of the City of Chicago, 385 F.3d 1104, 1111 (7th Cir. 2004); Johnson v. Cambridge Industries, Inc., 324 F.3d 892, 901 (7th Cir. 2003). Once Defendant argued that Plaintiff did not comply with the waybill, Plaintiff must present evidence that would tend to convince a trier of fact that Plaintiff's actions constituted use of the "automated system" as provided by the waybill. Shank v. William R. Hague, Inc., 192 F.3d 675, 683 (7th Cir. 1999) ("At the summary judgment stage, the party opposing a motion for summary judgment must take reasonable steps to provide the district court sufficient evidence to create a genuine issue of material fact to defeat the motion."). Plaintiff does not provide evidence that calling a DHL representative constituted use of the "automated system." For example, Plaintiff's affidavit does not indicate that in calling DHL he understood that he was using the "automated system," nor is there any evidence that placing a phone call is in fact using the "automated

14

system."  Indeed, Plaintiff provides no evidence that would define "automated system."  In Plaintiff's argument section, he does not even mention the "automated system" nor point to any evidence that would create an issue of fact as to whether Plaintiff used the "automated system."[10]

In this case, Plaintiff has made no argument that the waybill is not a fully integrated document.  Plaintiff has made no argument that the waybill is ambiguous.  Plaintiff has made no argument that any other circumstance, like fraud, would absolve him from being subject to the provisions of the waybill.  He also has made no argument that he paid for shipping protection that he did not receive.  In order to recover the amount that he requests, Plaintiff should have ensured that his agent completed the waybill in the manner prescribed by the contract or that he used the automated system to request added protection.  The failure to do so is fatal to his claim that his property was protected in the amount of $2000 each.[11]

---

[10] Neither party defines "automated system."  However, use of the term "automated" logically implies that the system used would not require interaction with another person.  Based on the prevalent use of the internet, the Court assumes that the system referred to is, perhaps in part, DHL's website which appears to allow a sender to "Prepare a shipment" and "schedule a pick-up" on-line.  http://www.dhl-usa.com/home/home.asp (follow "ship" hyperlink).

[11] Defendant appears to make, in passing, an argument that Plaintiff cannot prove which items were shipped and therefore cannot prove his damages.  The Court assumes that at trial

15

**CONCLUSION**

For the foregoing reasons, the Motion for Partial Summary Judgment filed by Defendant, DHL Express, on February 5, 2007 [Doc. 21] is GRANTED.  Plaintiff's damages are limited to the terms of the waybill, actual cash value or $100, whichever is less, for each box shipped.[1]

Entered this  14th  day of May, 2007

                                      s/ Joe B. McDade
                                      JOE BILLY McDADE
                                   United States District Judge

---

[1] Plaintiff will be able to present competent evidence of items shipped and items missing and/or damaged.